| | |
|---|---|
| Cynthia Davis, Cecilia Alvarez, | § C.A. No. _____ |
| Kathy Armstrong, Cheryl Bass, | § |
| Lloyd Bass II, Lisa Benton, | § |
| Gemi Blake, William Blake, | § |
| Annette Boatman, Gene Boatman, | § |
| Velma Boatman, James Bowles, | § |
| Leah Bowles, Edward Buck, | §            9(h) F.R.C.P. |
| Amanda Chapa, Norma Chapa, | § |
| Kevin Cox, Joseph Alvarez, Jr., | § |
| Edward Davis, Luis Jose DeOrbegoso, | §            In Admiralty |
| Pamela DeOrbegoso, Vernadette Foley, | § |
| Fernando Garcia, Daniel Glover, | § |
| Joyce Glover, Julie Glover, | § |
| Brittani Goodson, Brooklyn Goodson, | § |
| Shelley Goodson, Todd Hamilton, | § |
| Darcy Heaney, Gordon Heggem, | § |
| Maria Hernandez, Tomas Hernandez, | § |
| Virginia Hill, Dawn Howell, Carol Johnson, | § |
| John Johnson, Phyllis Joseph, | § |
| Royce Kennedy, Donnell King, | § |
| Denise Laffey, Kathryn Lakoduk, | § |
| Linda Luparell, Diana Mitchell, | § |
| Tiffany Mankin, I.J. McKinney, | § |
| Cydni McDonald, Lindsay McCune, | § |
| Jenna Nash, Olufemi Olukoya, | § |
| Brittany Orlando, Jay Paquinto, | § |
| Jessika Paquinto, David Richards, | § |
| Shawna Robinson, Hector Salazar, | § |
| Albertina Sample, Darren Sample, | § |
| Amy Sculley, Heather Shepard, | § |
| Cynthia Singletary, Stephanie Stack, | § |
| Cassie Terry, Luis Torres, Melissa Torres, | § |
| Kim Ware Janie Wilson, Tammy Jones, | § |
| Nathan Ryan Means, Melissa Means, | § |
| Kendra Stroud, Patricia Pruitt, | § |

Michelle Maddox, Barbara Anderson, §
Mary Crosby, Lenora L. Brooks, §
Wayne Gardovsky, Martha Ackley, §
Pamela Morris, Lila Dophied, §
Cynthia Brooks, Joseph Cayton, §
Tarie Cayton, Alton Cripps, Jean Cripps, §
David Cripps, Individually and a/n/f E.C., §
a minor child, Lisa Geagan, Fleda Key, §
Michelle Key, Mary Lafferty, §
Kim Northon, Debra Oubre, Iara Pires, §
Bettina Rodriguez, Individually and a/n/f §
I.R., a minor child, Tanya Spears, §
Serena Bautista, Bill Otteson, Larry Poret, §
Individually and a/n/f R.P., a minor child, §
Carmel Taylor, Individually and a/n/f §
A.T., a minor child, Anna Santa Ana, §
Diane Tucker and Leslie Mayberry, §
§
    Plaintiffs, §
§
v. §
§
Valsamis, Inc., *in personam*, §
§
    Defendant. §

## <u>PLAINTIFFS' ORIGINAL COMPLAINT</u>

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

    COME NOW Plaintiffs Cynthia Davis, Cecilia Alvarez, Kathy Armstrong,

Cheryl Bass, Lloyd Bass II, Lisa Benton, Gemi Blake, William Blake, Annette

Boatman, Gene Boatman, Velma Boatman, James Bowles, Leah Bowles, Edward

Buck, Amanda Chapa, Norma Chapa, Kevin Cox, Joseph Alvarez, Jr. Edward Davis,

Luis Jose DeOrbegoso, Pamela DeOrbegoso, Vernadette Foley, Fernando Garcia, Daniel Glover, Joyce Glover, Julie Glover, Brittani Goodson, Brooklyn Goodson, Shelley Goodson, Todd Hamilton, Darcy Heaney, Gordon Heggem, Maria Hernandez, Tomas Hernandez, Virginia Hill, Dawn Howell, Carol Johnson, John Johnson, Phyllis Joseph, Royce Kennedy, Donnell King, Denise Laffey, Kathryn Lakoduk, Linda Luparell, Diana Mitchell, Tiffany Mankin, I.J. McKinney, Cydni McDonald, Lindsay McCune, Jenna Nash, Olufemi Olukoya, Brittany Orlando, Jay Paquinto, Jessika Paquinto, David Richards, Shawna Robinson, Hector Salazar, Albertina Sample, Darren Sample, Amy Sculley, Heather Shepard, Cynthia Singletary, Stephanie Stack, Cassie Terry, Luis Torres, Melissa Torres, Kim Ware Janie Wilson, Tammy Jones, Nathan Ryan Means, Melissa Means, Kendra Stroud, Patricia Pruitt, Michelle Maddox, Barbara Anderson, Mary Crosby, Lenora L. Brooks, Wayne Gardovsky, Martha Ackley, Pamela Morris, Lila Dophied, Cynthia Brooks, Joseph Cayton, Tarie Cayton, Alton Cripps, Jean Cripps, David Cripps, Individually and a/n/f E.C., a minor child, Lisa Geagan, Fleda Key, Michelle Key, Mary Lafferty, Kim Northon, Debra Oubre, Iara Pires, Bettina Rodriguez, Individually and a/n/f I.R., a minor child, Tanya Spears, Serena Bautista, Bill Otteson, Larry Poret, Individually and a/n/f R.P., a minor child, Carmel Taylor, Individually and a/n/f A.T., a minor child, Anna Santa Ana, Diane Tucker, and Leslie Mayberry,

3

complaining of Defendant Valsamis, Inc., *in personam* ("Defendant" or "Valsamis"), and, for cause of action, would respectfully show unto this Honorable Court the following:

## I. PARTIES

1.01 Plaintiff Cynthia Davis is a resident of Galveston County, Texas.

1.02 Plaintiff Cecilia Alvarez is a resident of Bexar County, Texas.

1.03 Plaintiff Kathy Armstrong is a resident of Collin County, Texas.

1.04 Plaintiff Cheryl Bass is a resident of Denton County, Texas.

1.05 Plaintiff Lloyd Bass II is a resident of Denton County, Texas.

1.06 Plaintiff Lisa Benton is a resident of Bexar County, Texas.

1.07 Plaintiff Gemi Blake is a resident of Fort Bend County, Texas.

1.08 Plaintiff William Blake is a resident of Fort Bend County, Texas.

1.09 Plaintiff Annette Boatman is a resident of Nueces County, Texas.

1.10 Plaintiff Gene Boatman is a resident of Nueces County, Texas.

1.11 Plaintiff Velma Boatman is a resident of Nueces County, Texas.

1.12 Plaintiff James Bowles is a resident of Fort Bend County, Texas.

1.13 Plaintiff Leah Bowles is a resident of Fort Bend County, Texas.

1.14 Plaintiff Edward Buck is a resident of Harris County, Texas.

1.15 Plaintiff Amanda Chapa is a resident of Brazoria County, Texas.

1.16    Plaintiff Norma Chapa is a resident of Brazoria County, Texas.

1.17    Plaintiff Kevin Cox is a resident of Harris County, Texas.

1.18    Plaintiff Joseph Alvarez, Jr. is a resident of Bexar County, Texas.

1.19    Plaintiff Edward Davis is a resident of Harris County, Texas.

1.20    Plaintiff Luis Jose DeOrbegoso is a resident of Harris County, Texas.

1.21    Plaintiff Pamela DeOrbegoso is a resident of Harris County, Texas.

1.22    Plaintiff Vernadette Foley is a resident of Harris County, Texas.

1.23    Plaintiff Fernando Garcia is a resident of Santa Clara County, California.

1.24    Plaintiff Daniel Glover is a resident of Matagorda County, Texas.

1.25    Plaintiff Joyce Glover is a resident of Matagorda County, Texas.

1.26    Plaintiff Julie Glover is a resident of Galveston County, Texas.

1.27    Plaintiff Brittani Goodson is a resident of Harris County, Texas.

1.28    Plaintiff Brooklyn Goodson is a resident of Harris County, Texas.

1.29    Plaintiff Shelley Goodson is a resident of Harris County, Texas.

1.30    Plaintiff Todd Hamilton is a resident of Harris County, Texas.

1.31    Plaintiff Darcy Heaney is a resident of Galveston County, Texas.

1.32    Plaintiff Gordon Heggem is a resident of Fort Bend County, Texas.

1.33    Plaintiff Maria Hernandez is a resident of Brazoria County, Texas.

1.34   Plaintiff Tomas Hernandez is a resident of San Mateo County, California.

1.35   Plaintiff Virginia Hill is a resident of Lamar County, Texas.

1.36   Plaintiff Dawn Howell is a resident of Travis County, Texas.

1.37   Plaintiff Carol Johnson is a resident of Harris County, Texas.

1.38   Plaintiff John Johnson is a resident of Harris County, Texas.

1.39   Plaintiff Phyllis Joseph is a resident of Harris County, Texas.

1.40   Plaintiff Royce Kennedy is a resident of Harris County, Texas.

1.41   Plaintiff Donnell King is a resident of Brazoria County, Texas.

1.42   Plaintiff Denise Laffey is a resident of Galveston County, Texas.

1.43   Plaintiff Kathryn Lakoduk is a resident of Anchorage Municipality County, Alaska.

1.44   Plaintiff Linda Luparell is a resident of Sangamon County, Illinois.

1.45   Plaintiff Diana Mitchell is a resident of Harris County, Texas.

1.46   Plaintiff Tiffany Mankin is a resident of Galveston County, Texas.

1.47   Plaintiff I.J. McKinney is a resident of Harris County, Texas.

1.48   Plaintiff Cydni McDonald is a resident of Harris County, Texas.

1.49   Plaintiff Lindsay McCune is a resident of Williamson County, Texas.

1.50   Plaintiff Jenna Nash is a resident of Travis County, Texas.

1.51   Plaintiff Olufemi Olukoya is a resident of Harris County, Texas.

1.52   Plaintiff Brittany Orlando is a resident of Harris County, Texas.

1.53   Plaintiff Jay Paquinto is a resident of Harris County, Texas.

1.54   Plaintiff Jessika Paquinto is a resident of Harris County, Texas.

1.55   Plaintiff David Richards is a resident of Galveston County, Texas.

1.56   Plaintiff Shawna Robinson is a resident of Galveston County, Texas.

1.57   Plaintiff Hector Salazar is a resident of Cameron County, Texas.

1.58   Plaintiff Albertina Sample is a resident of Tarrant County, Texas.

1.59   Plaintiff Darren Sample is a resident of Anchorage Municipality County, Alaska.

1.60   Plaintiff Amy Sculley is a resident of Harris County, Texas.

1.61   Plaintiff Heather Shepard is a resident of Harris County, Texas.

1.62   Plaintiff Cynthia Singletary is a resident of Anderson County, Texas.

1.63   Plaintiff Stephanie Stack is a resident of Brazoria County, Texas.

1.64   Plaintiff Cassie Terry is a resident of Brazoria County, Texas.

1.65   Plaintiff Luis Torres is a resident of Cameron County, Texas.

1.66   Plaintiff Melissa Torres is a resident of Cameron County, Texas.

1.67   Plaintiff Kim Ware is a resident of Harris County, Texas.

1.68   Plaintiff Janie Wilson is a resident of Galveston County, Texas.

1.69    Plaintiff Tammy Jones is a resident of Montgomery County, Texas.

1.70    Plaintiff Nathan Ryan Means is a resident of Harris County, Texas.

1.71    Plaintiff Melissa Means is a resident of Harris County, Texas.

1.72    Plaintiff Kendra Stroud is a resident of Montgomery County, Texas.

1.73    Plaintiff Patricia Pruitt is a resident of Brazoria County, Texas.

1.74    Plaintiff Michelle Maddox is a resident of Brazoria County, Texas.

1.75    Plaintiff Barbara Anderson is a resident of Brazoria County, Texas.

1.76    Plaintiff Mary Crosby is a resident Brazoria County, Texas.

1.77    Plaintiff Lenora Brooks is a resident of Brazoria County, Texas.

1.78    Plaintiff Wayne Gardovsky is a resident of Brazoria County, Texas.

1.79    Plaintiff Martha Ackley is a resident of Harris County, Texas.

1.80    Plaintiff Pamela Morris is a resident of Brazoria County, Texas.

1.81    Plaintiff Lila Dophied is a resident of Brazoria County, Texas.

1.82    Plaintiff Cynthia Brooks is a resident of Brazoria County, Texas.

1.83    Plaintiff Joseph Cayton is a resident of Collin County, Texas.

1.84    Plaintiff Tarie Cayton is a resident of Collin County, Texas.

1.85    Plaintiff Alton Cripps is a resident of Galveston County, Texas.

1.86    Plaintiff Jean Cripps is a resident of Galveston County, Texas.

1.87 Plaintiff David Cripps, Individually and a/n/f of E.C., a minor child, is a resident of Galveston County, Texas.

1.88 Plaintiff, Lisa Geagan, is a resident of Harris County, Texas.

1.89 Plaintiff, Fleda Key, is a resident of Harris County, Texas.

1.90 Plaintiff, Michelle Key, is a resident of Harris County, Texas.

1.91 Plaintiff Mary Lafferty is a resident of Harris County, Texas.

1.92 Plaintiff, Kim Northon, is a resident of Brazoria County, Texas.

1.93 Plaintiff Debra Oubre is a resident of Galveston County, Texas.

1.94 Plaintiff Iara Pires is a resident of Galveston County, Texas.

1.95 Plaintiff Bettina Rodriguez, Individually, and a/n/f of I.R., a minor child, is a resident of Denton County, Texas.

1.96 Plaintiff Tanya Spears is a resident of Brazoria County, Texas.

1.97 Plaintiff Serena Bautista is a resident of Harris County, Texas.

1.98 Plaintiff Bill Otteson is a resident of Angelina County, Texas.

1.99 Plaintiff Larry Poret, Individually and a/n/f of R.P., a minor child, is a resident of Angelina County, Texas.

1.100 Plaintiff Carmel Taylor, Individually and a/n/f of A.T., a minor child, is a resident of Angelina County.

1.101 Plaintiff Anna Santa Ana is a resident of Travis County, Texas.

1.102 Plaintiff Diane Tucker is a resident of Lee County, Florida.

1.103 Plaintiff Leslie Mayberry is a resident of Harris County, Texas.

1.104 Defendant Valsamis, Inc., is a corporation incorporated under the laws of Texas, with its principal place of business in Houston, Texas, and may be served with process through its registered agent, Dimitrios Valsamis, 5814 Northdale Street, Houston, Texas 77087.

## II. JURISDICTION

2.01   The Court has jurisdiction over the lawsuit under 28 U.S.C. §1333 because the suit involves admiralty and maritime jurisdiction.  This case is brought pursuant to the general maritime law, and any other applicable laws.

## III. VENUE

3.01   Venue is proper in this matter pursuant to the admiralty and maritime laws of the United States, Rule 82 Fed. R. Civ. P.

## IV. REQUEST FOR DECLARATORY JUDGMENT

4.01   There is an actual case and controversy between Plaintiff and Defendant regarding the applicability and enforceability of all or any part of the purported ticket contract which Carnival Corporation, d/b/a Carnival Cruise Lines ("Carnival") attempted to form with Plaintiffs for a  voyage scheduled to depart aboard the MV *Carnival Triumph* (the "Vessel") on February 7, 2013, from Galveston, Texas, which

included, by way of example only, a clause purporting to extend all rights, exemptions from liability, defenses and immunities to other third parties, and declaring, invalidly, these third parties to have no liability to passengers aboard the Vessel greater than or different from that of Carnival.

4.02   Plaintiffs assert the purported ticket contract is unenforceable based on a material failure of consideration.  The voyage Plaintiffs may have contracted with Carnival to take was never completed, and in fact the ticket price for the voyage was paid back to Plaintiffs, or tendered to Plaintiffs, or otherwise refunded, so there was no bargained-for exchange, no price paid for a fulfilled promise, and so the contract cannot be enforced by Carnival or any third parties, including Defendant, against Plaintiffs.

4.03   Alternatively, the contract is unenforceable as it contains illusory promises by Carnival which could not be supported by consideration.  By these and other theories, the contract is unenforceable by Carnival, and so is also unenforceable by any third parties or Defendant against Plaintiffs.  Plaintiffs also claim that any purported contract of passage upon which Defendant may attempt to rely is an adhesion contract and therefore unenforceable against the Plaintiffs.

4.04   Plaintiffs are filing this action in this Court because venue is proper here pursuant to the admiralty and maritime laws of the United States, Rule 82 of the

Federal Rules of Civil Procedure. Plaintiffs reserve all rights to, and give notice of their intent to, challenge any and all aspects of any purported ticket contract, including, but not limited to, failure of formation and lack of enforceability.

4.05   Consequently, Plaintiffs request this Court to declare any purported contract for passage or carriage for the voyage departing Galveston, Texas, aboard the Vessel on February 7, 2013, as unenforceable, and any of the purported terms of such contact inapplicable to Plaintiff, including, but not limited to, terms which purport to extend to third parties, including Defendant herein, any rights, exemptions from liabilty, defenses or immunities under that purported contract.

4.06   Further, and in the alternative, whether this Court denies Plaintiffs' request for declaratory judgment relief, or grants it, Plaintiffs further pray for such other and further relief as sought herein below.

## V. BACKGROUND

5.01   The Vessel is a Bahamas-flagged passenger / cruise vessel of 101,509 gross tons, built in 1999, which is owned, managed and/or operated by Defendant, LR/IMO No. 9138850, Call Sign C6FN5.

5.02   On or about February 7, 2013, Plaintiffs boarded the Vessel in Galveston, Texas, to enjoy a four-day leisure vacation cruise to Mexico. The cruise was to arrive back in Galveston in February 11, 2013.

5.03    At all relevant times, Defendant was hired, retained and otherwise authorized by Carnival to perform maintenance on the Vessel, in particular its engines and diesel generators, and equipment appurtenant thereto. Upon information and belief, and without limitation, Valsamis designed, manufactured, and/or constructed insulation panels, fuel pipe covers, T-shaped structures and other apparatuses that the company installed on diesel generators and in other places in order to reduce the temperature of existing hot spots on the Vessel's engines.

5.04    At all times material hereto, Plaintiffs were invitees aboard the Vessel.

5.05    On or about February 10, 2013, when the Vessel was approximately 150 miles off Mexico's Yucatan Peninsula, a fire broke out in the Vessel's aft engine room as a result of a leak in a fuel oil feeder/supply line (a/k/a flexible fuel line or flexible fuel hose) connected to Diesel Generator #6 ("DG6") that sprayed fuel between the engine's turbochargers and ignited.

5.06    The fire knocked out the Vessel's primary power source, crippling her water and plumbing systems, and leaving her adrift and without power.

5.07    On the date and time of the subject incident, Defendant knew or should have known of the conditions aboard the Vessel and the ever-present dangers pertaining to the Vessel's propulsion system and/or fire in her engine room, as well

as other dangerous conditions brought about or exacerbated by the lack of planned maintenance, or negligently performed maintenance, among other things.

5.08  Despite what it knew or should have known,  Defendant did nothing to eliminate these hazardous and dangerous conditions, including but not limited to failing to make proper recommendations to Carnival about the elimination of these hazards and dangerous conditions or otherwise ensuring its recommendations were carried out, and failing to warn or otherwise advise the traveling public, as well as those bodies and authorities responsible for regulating Carnival's operations, and for inspecting the Vessel, of the hazardous and dangerous conditions onboard the Vessel.

5.09  Defendant had the responsibility, obligation and duty to remedy or otherwise properly maintain the Vessel to avoid, lessen, eliminate or otherwise remedy such hazards, but it failed to discharge its responsibility, obligation and duty reasonably or with due care, and so allowed the conditions aboard the Vessel to continue, and deteriorate, which conditions led to the fire onboard the Vessel that crippled her primary power source, leaving her adrift and without power, and thus causing the damages and injuries claimed by Plaintiffs.

5.10  As early as December 15, 2011, DG6 was overdue for planned maintenance as per the Vessel's planned maintenance requirements and was not in compliance with SOLAS, and Defendant was aware of this.

5.11   On March 7, 2012, Carnival issued an Advisory Notice regarding flexible fuel lines stating that on February 27, 2012, a fire occurred in the diesel generator room of the Costa *Allegra* (Costa Line being another Operating Line of Carnival Corporation and plc) which damaged the main switchboard above within the same space, and the vessel blacked out (*i.e.*, the electrical supply became disabled). That fire was believed to have started from a fuel line leak on one of the diesel generators.  Importantly, at that time, Carnival advised all its operating lines to ensure that their vessel's fuel lines were fitted with spray guards and all hot surfaces suitably insulated.  Soon thereafter, Defendant undertook to insulate certain of the Vessel's hot surfaces, and to fabricate and install other appuratuses, but not on the diesel generator in issue.

5.12   In this case, the subject engine room fire would not have occurred if Defendant had discharged its duty to maintain the engines and diesel generators, and had done the work it knew was required in order to properly and reasonably discharge its duties.

5.13   The subject engine room fire would not, in all reasonable probability, have occurred if Defendant had advised Carnival about the dangers and risks of fire and other catastrophe given Carnival's lack of, and ignorance of, its own planned

maintenance schedules, or if Defendant had notified the bodies and authorities responsible for regulating Carnival's operations, and for inspecting the Vessel.

5.14    Until the Vessel disembarked passengers, including Plaintiffs, Plaintiffs were exposed to and forced to endure extremely toxic, debilitating, deplorable, unsafe and unsanitary conditions, including but not limited to, sweltering temperatures, lack of power and air conditioning, lack of hot or running water, and lack of working toilets.    Plaintiffs were further exposed to the following:  (1) sewage flowing throughout the state rooms and hallways of the Vessel; (2) limited and inadequate food and water; (3) noxious odors emanating from the sewage passing throughout the vessel; (4) smoke within the hallways; (5) having to urinate within the showers and bath tubs of the state rooms; (6) feces stored in bags and un-flushed toilets; and (7) spoiled food.

5.15    As the Vessel was finally aided by slow-to-arrive tug boats, and slowly towed to shore, Plaintiffs feared for their lives and safety, under constant threat of contracting serious illness by the raw sewage filling the Vessel and lack of adequate food and water, all of which caused Plaintiffs to sustain personal injuries.

5.16    During the horrifying and excruciating tow back to the United States, the Vessel listed sharply several times, causing human waste to spill out of non-functioning toilets, flood across the Vessel's floors and halls, and drip down the

16

Vessel's walls. Plaintiffs were forced to endure unbearable and horrendous odors on the filthy and disabled Vessel, and walk through human feces in order to reach food lines where the wait was counted in hours, only to receive rations of spoiled food. Plaintiff was forced to subsist for days in a floating toilet, a floating Petri dish, a floating hell.

5.17    As a result of the Defendant's negligence and other acts and failures to act, Defendant caused Plaintiffs to be exposed to the unsafe, unsanitary, savage conditions onboard the Vessel, and further causing Plaintiff to suffer risk of, or actual, physical injuries and immense, incalculable mental anguish.

## VI.  FIRST CAUSE OF ACTION
### A.  Negligence and Gross Negligence

6.01    Plaintiffs re-allege paragraphs 4.01 through 5.17 as though fully set forth herein.

6.02    At all times material hereto, Defendant had a duty to exercise reasonable in the discharge of its duties to maintain the engines and diesel generators of the Vessel, in order to care for the safety of its passengers, including the Plaintiffs herein, and to exercise reasonable care and effort to avoid subjecting Plaintiff to suffering or inconvenience.

6.03    Defendants, alone or through its agents, servants and/or employees, was careless and negligent by, inter alia:

6.03.01    Negligently causing a fire on board the Vessel;

6.03.02    Negligently allowing a fire to occur on board the Vessel;

6.03.03    Failing to properly maintain the Vessel and its equipment, including but not limited to structures and machinery in the engine room, so as to cause a fire to break out, resulting in a loss of power to the vessel, among other things;

6.03.04    Negligently hiring, contracting, supervising, training, and/or retaining the persons responsible for performing the maintenance of the Vessel that Defendant was obligated to perform;

6.03.05    Negligently maintaining the Vessel;

6.03.06    Failing to observe, obey and enforce applicable safety and other related regulations applicable to the Vessel;

6.03.07    Failing to comply with applicable International Maritime Organization rules and regulations, including Carnival's International Safety Management Code;

6.03.08    Failing to maintain the Vessel in a safe and reasonable manner and remedy known hazards or unsafe conditions onboard the Vessel;

6.03.09    Allowing an ongoing, recurring, continuous and/or repetitive problem to occur on the Vessel which would cause incidents or injuries; and/or

6.03.16    Other acts of negligence that will be shown at trial.

6.04    The Defendant caused, created or allowed to exist a dangerous condition, in particular, but not by way of limitation, that led to the inevitability of a fire occurring in the Vessel's engine room that dismantled or otherwise disengaged the ship's propulsion system and electrical capabilities on the Vessel, and allowed this dangerous condition to exist thereby causing the incident referred to above, as well as on the succeeding dates Plaintiffs had to be aboard the Vessel, during which the Plaintiffs were severely injured and/or exposed to extremely noxious and debilitating conditions.

6.05    The Vessel had experienced previous mechanical, propulsion and/or engine problems similar to those experienced during this voyage. Accordingly, Defendant knew, or should have known, of the dangerous and/or hazardous condition(s) on board the Vessel prior to departing on the subject cruise.

6.06   The Defendant either (a) created the dangerous condition through its agents or employees; (b) had actual knowledge of the dangerous condition; and/or (c) had constructive knowledge of the dangerous condition.

6.07   The Defendant had constructive knowledge of the dangerous condition by, *inter alia*, (a) the length of time the dangerous condition existed; and/or (b) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity.  Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care the Defendant should have known about it.

6.08   In the alternative, notice to the Defendant is not required because the Defendant (a) engaged in and was guilty of negligent maintenance; and/or (b) engaged in and was guilty of negligent methods of operation.

6.09   The negligent condition(s) created or allowed to remain by the Defendant, and was or were known to the Defendant; and had existed for a sufficient length of time so that Defendant should have known of it, and was a continuous or repetitive problem thus giving notice to Defendant. The negligent condition(s) occurred with sufficient regularity so as to be foreseeable by the Defendant, and/or should have been foreseeable by the Defendant.

6.10    As a proximate result of the Defendant's conduct, Plaintiffs sustained serious physical and emotional injuries.  Specifically, Plaintiffs reasonably feared for their lives and suffered serious emotional and mental distress as a result of Defendant's acts and/or omissions.  Additionally, during the ill-fated voyage, and as a direct and proximate result of Defendant's negligent, intentional and/or reckless conduct, Plaintiffs were exposed to an immediate risk of physical harm and/or did in fact suffer physical distress and physical injuries, along with resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life.

6.11    Further, and as a direct and proximate result of Defendant's negligent, grossly negligent, intentional and/or reckless conduct, Plaintiffs suffered severe emotional distress.  Such emotional injuries resulted in physical manifestations, including but not limited to sickness, nausea, anxiety, headaches, insomnia, and nightmares.  Plaintiffs have undergone and/or continue to undergo, or may in the future undergo, treatment for their emotional and physical injuries suffered during the voyage.

6.12    In addition to the above negligent acts, Defendant acted willfully, wantonly, with callous disregard, and with malice, or recklessness, in doing the things alleged, and was grossly negligent in these particulars, including but not limited

failing to remedy the defects and dangerous conditions of the Vessel, as Defendant had a duty to, in particular given its knowledge the Vessel had experienced previous mechanical, propulsion and/or engine problems similar to those experienced during this voyage, all as alleged more particularly above.

6.13   Despite their knowledge, Defendant failed to remedy or address the deficiencies of which they had notice, and failed, with this same conscious indifference, to remedy the failings addressed above or to give notice to the traveling public and the bodies and authorities responsible for regulation and oversight of Carnival's Vessel and its operations, and so were grossly negligent in those particulars as well.  Defendants put monetary gain above safety and protection of human lives and limb, with these tragic consequences, and so Defendants should be punished for this conduct by the imposition of punitive damages.

6.14   Defendant further failed to remedy or report on what it knew for months (if not for more than a year), the failure to install insulation panels, fuel pipe covers, T-shaped structures and other apparatuses on diesel generators and in other places in order to reduce the temperature of existing hot spots on the Vessel's engines, among other things, would have prevented this horrific incident.  As such, the Defendant acted wantonly and with conscious indifference by any legal standard (if not moral standard) to the safety of the passengers and crew aboard the Vessel they were duty

bound to maintain, effectively playing Russian *roulette* with each of their lives. As such, Defendant is grossly negligent, and Plaintiffs respectfully request the award of punitive damages to prevent such callous corporate disregard for the crew and passengers in this case, and in the future as a deterrent to such conduct.

6.15    When viewed objectively from the standpoint of Defendant, their acts or omissions in failing to remedy the known deficiencies, and otherwise address the failings of the Vessel, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendant had actual, subjective, awareness of the risk involved, but nevertheless proceeded in conscious indifference to the rights, safety, and welfare of Plaintiffs.

6.16    Plaintiffs' injuries were not culminated by any contributing fault of their own, but solely the defective, unsafe, and otherwise deplorable condition of the Vessel and its equipment and/or appurtenances, an environment brought about by the negligence and gross negligence of Defendant.

WHEREFORE, Plaintiff prays for the following relief:

A.      As to the Request for Declaratory Judgment, a finding the purported ticket contract Carnival attempted to form with Plaintiff is unenforceable in all respects for failure of consideration or otherwise, and that all limitations, obligations and benefits Defendant would by extension

attempt either to impose on Plaintiffs as conditions or enjoy for themselves as a defense, be declared unenforceable and without consequence or effect on the claims for damages and other relief requested by Plaintiff;

B.    As to the First Cause of Action for Negligence, including Gross Negligence:

    (1)    Actual damages for Plaintiff' physical and emotional injuries;

    (2)    exemplary damages;

    (3)    pre- and post-judgment interest; and

    (4)    costs of suit.

C.    As to all causes of action, for all such other and further relief to which Plaintiff may show herself justly entitled, in law or in equity.

Respectfully submitted,

*/s/ Francis I. Spagnoletti*
Francis I. Spagnoletti
SBN 18869600 / SDTX ID 5369
401 Louisiana Street, 8th Floor
Houston, Texas 77002
Telephone:   713-653-5600
Facsimile:   713-653-5656
Email:        fspagnoletti@spaglaw.com

**OF COUNSEL**:

SPAGNOLETTI & CO.
David S. Toy
SBN 24048029 / SDTX ID 588699
401 Louisiana Street, 8th Floor
Houston, Texas 77002
Telephone:  713-653-5600
Facsimile:   713-653-5656
Email:         dtoy@spaglaw.com

ATTORNEYS FOR PLAINTIFFS